UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOYCE L. WILLIAMS,

       Plaintiff                 Civil Action No. 08-13472

v.

                                  District Judge Sean F. Cox
                                  Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Joyce Williams brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits. Before the Court are the parties' cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") on September 4, 2003 alleging disability as of December 12, 1996 (Tr. 78-80), later amending her onset of disability date to December 31, 2001 (Tr. 19). After the initial denial of benefits, Plaintiff

filed a timely request for an administrative hearing, held on May 25, 2005 in Oak Park, Michigan (Tr. 393). Administrative Law Judge ("ALJ") Jerome B. Blum presided (Tr. 393). Plaintiff, represented by attorney Evan Zagoria, testified, as did vocational expert ("VE") Ellen Tripi (Tr. 415, 432). On July 27, 2005, ALJ Blum determined that Plaintiff could perform her past relevant work as a bookkeeper (Tr. 339). On December 7, 2005, the Appeals Council remanded the case to ALJ Blum, directing him to (1) address treating source opinion and Plaintiff's obesity (2) fully explain the ALJ's reasons for discounting Plaintiff's credibility (3) obtain evidence from a VE "[i]f warranted by the record" (Tr. 343-345).

The ALJ conducted a second hearing on May 30, 2007 (Tr. 412). Plaintiff, again represented by Evan Zagoria, testified, as did Vocational Expert ("VE") Lawrence Zatkin (Tr. 397-409, 410). On July 27, 2007, ALJ Blum again found that Plaintiff was capable of performing her past relevant work as a bookkeeper (Tr. 23). On July 9, 2008, the Appeals Council denied review (Tr. 7-9). Plaintiff filed for judicial review of the administrative decision on August 12, 2008.

## BACKGROUND FACTS

Plaintiff, born July 10, 1952, was 55 when the ALJ issued his decision (Tr. 78-80). Plaintiff completed four years of college and worked previously as a rug maker and bookkeeper (Tr. 93). Plaintiff's application for benefits alleges disability as a result of migraine headaches, obesity, sleep apnea, and neck, back, and shoulder pain (Tr. 86).

-2-

**A. Plaintiff's Testimony**[1]

**1. May 25, 2005**[2]

Plaintiff, 5' 9" and 303 pounds, testified that she lived with her husband in a single-family home in Richmond, Michigan (Tr. 415). Plaintiff, one month short of her 53 birthday, reported that her weight peaked at 391 pounds in 2001 (Tr. 416). Plaintiff, holding a Bachelor's degree in business administration, reported that she worked as a bookkeeper/financial advisor to an ambulance service until 1996 (Tr. 416-417). She estimated that she spent 60 percent of her working hours sitting and the remaining time standing and/or walking to and from a file cabinet, adding that the job did not require her to lift more than two to three pounds (Tr. 416-417). She alleged that lower back, neck, and left knee pain prevented her from performing the bookkeeping job, adding that her neck pain "radiated" into her arms and hands (Tr. 418-419). Plaintiff testified that upon ceasing to work as a bookkeeper, her rug-making hobby "grew into a business," but that physical limitations required her to stop working in December, 2001 (Tr. 417).

Plaintiff denied that at the time of her last date insured in 2001 she wore a back brace or corset or engaged in physical therapy (Tr. 421). However, she alleged that in 2001 she

---

[1]

Because Plaintiff's brief cites her hearing testimony from both the May 25, 2005 and May 30, 2007 hearings, summations for both are included here. A review of briefs by both parties shows that neither Plaintiff nor Defendant noticed that the May 25, 2005 hearing transcript was incorrectly listed as the May 30, 2007 transcript (Tr. 415-432) and vice versa (Tr. 396-410).

[2]Contained in the transcript dated May 30, 2007.

-3-

was experiencing dizzy spells (as a result of high blood pressure), sleep apnea, and back

discomfort requiring her to change positions every 15 to 20 minutes (Tr. 422, 429).  She

opined that as of December, 2001, her need to recline multiple times each day precluded all

work, estimating that she was unable to stand for more than 15 minutes or walk for less than

one block (Tr. 429-430).  Plaintiff testified that she typically spent her days lying on the sofa

watching television, and making lunch, adding that her rug-making activities were limited

to 15 minutes per day (Tr. 430).

Plaintiff reported that a CPAP machine prescribed in 2002 improved, but did not

eliminate symptoms of sleep apnea, alleging ongoing sleep interruptions and daytime

grogginess  (Tr. 422-423).   Plaintiff testified that her "level five" headaches  preceded the

December, 2001 expiration of benefits (Tr. 423-424).  She alleged that after hitting her head

in 2002, she experienced "constant" headaches (Tr. 425).  Plaintiff reported that as a result

of the 2002 accident she required speech and memory therapy, adding that she underwent a

cervical fusion in February, 2005 (Tr. 426).  She testified that pain medication, muscle

relaxants, the TENS unit, and physical therapy reduced her pain from "level 9" to "level 7"

(Tr. 428).  She admitted that she continued to perform household chores, do laundry, and

shop with the help of her husband (Tr. 431).  She reported attending church, dining out, and

camping on a regular basis (Tr. 431).  Plaintiff admitted that she continued to drive one to

two times per week (Tr. 432).

### 2.  May 30, 2007

Plaintiff, 347 pounds at the time of the hearing, testified that she weighed 395 pounds on the date last insured of December 31, 2001 (Tr. 397). Plaintiff reported that although she attempted to make a living making rugs between 1996 and 2001, her physical limitations prevented her from working full time (Tr. 398). She alleged that during the period in question, she spent at least six hours every day reclining with her feet elevated, also reporting shortness of breath, knee problems, muscle spasms, and radiating shoulder and neck pain (Tr. 399-402). She opined that performing bookkeeping work in December, 2001 would have caused "constant severe pain," adding that although her condition had since improved, she was still unable to work as a bookkeeper (Tr. 404). Plaintiff also alleged that in December, 2001 she experienced high blood pressure and fatigue (Tr. 406). She reported that she was unable lift more than 10 pounds or sit for more than 20 to 30 minutes without changing positions (Tr. 407). Plaintiff admitted that as of December, 2001, a typical day consisted of getting dressed, taking medication, lying down, starting a load of laundry, making and eating lunch, lying down, making dinner, doing the dishes, taking a walk, and "spend[ing] the rest of the night on the sofa" (Tr. 408). Plaintiff admitted that she continued to attend church and socialize (Tr. 408-409).

### B. Medical Evidence

### 1. Treating Sources

In July, 1999, Plaintiff reported chest "tightness" (Tr. 245). In August, 1999 imaging studies showed the absence of myocardial ischemia (Tr. 174). Plaintiff's blood pressure reading was 180/110 (Tr. 245). The following month, Kevin Klein, D.O. noted that

Plaintiff's cholesterol/HDL ratio was 3.3 with an LKS of less than 100 (Tr. 175). Plaintiff, reporting that she had been "asymptomatic," was encouraged to "practice prudent dietary habits, exercise as tolerated," and continue taking Tenormin and Dyazide on a daily basis (Tr. 175). In September, 1999, Plaintiff reported right knee pain (Tr. 244). Thomas Mianecki, D.O. noted that x-rays showed only "minimal arthritic changes" (Tr. 244). In September, 2000, Plaintiff's blood pressure reading was 128 /70 (Tr. 242). Dr. Mianecki noted a history of multiple allergies, and "[s]uspected dermatofibroma of the right thigh, and hypertension" (Tr. 242). In July, 2001, Dr. Mianecki's notes state that Plaintiff had sought emergency treatment for low potassium (Tr. 238). Plaintiff's blood pressure was "slightly elevated" at 164/90 (Tr. 238). The following month, Plaintiff denied chest pain, or shortness of breath, indicating that she felt "relatively well" despite ongoing weight problems (Tr. 237). An opinion letter created by Dr. Mianecki in October, 2003 states that as of December, 2001, Plaintiff's weight exceeded 390 pounds (Tr. 221).

January, 2002 imaging studies of the ankles showed the absence of significant joint erosion or deformities suggesting rheumatoid arthritis (Tr. 180). February 19, 2002 treating notes state that Plaintiff's weight was 357.7 (Tr. 276). In April, 2002, Plaintiff received stitches after falling and hitting her head (Tr. 190). The following month, physical therapy intake notes state that Plaintiff reported difficulty "walking or standing over 30 minutes or sitting for over one hour"(Tr. 211). Dr. Mianecki's records from the same month indicate that Plaintiff continued to experience headaches as well as "gouty arthritis" (Tr. 234-235). A July, 2002 imaging study of the brain showed normal results (Tr. 189). The same month,

Plaintiff reported ongoing headaches, depression, and frustration (Tr. 231). The following month, Plaintiff reported that she had experienced ongoing headaches since the April, 2002 injury (Tr. 190). Plaintiff's blood pressure reading was 115/75 (Tr. 191). Anne M. Guyot, M.D. noted that Plaintiff should be re-examined "before she goes back down to Florida in the fall" (Tr. 192, 264). The same month, an MRI showed a "moderate leftward disc protrusion" which did not "touch or displace the cord" at C7-T1 with otherwise mild or nonexistent abnormalities (Tr. 193). In November, 2002 a sleep study showed that Plaintiff's sleep apnea was controlled with a CPAP (Tr. 196). The same month, an MRI of the left shoulder showed the absence of a rotator cuff tear (Tr. 208).

In May, 2003, Dr. Mianecki's treating notes show that Plaintiff experienced a "dramatic" weight loss from the previous year (Tr. 229). January, 2004 treating notes, acknowledging Plaintiff's history of migraines and morbid obesity, observed "no edema," and a regular heart rate (Tr. 287). The following month, a polysomnogram showed the presence of "mild obstructive sleep apnea" (Tr. 292). Dennis R. Bassetti, M.D. opined that "weight loss would substantially improve, if not cure" Plaintiff's sleep apnea (Tr. 292). April, 2004 treating notes indicate that Plaintiff reported dizziness (Tr. 224). In July, 2004, Plaintiff reported to Katherine H. Karo, D.O. that she had first experienced headaches after her April, 2002 accident (Tr. 329). In September, 2004, Dr. Karo found that that Plaintiff had a "full active range of motion of the bilateral upper extremities" with 5/5 strength (Tr. 322). Plaintiff reported that she experienced approximately one migraine headache per week, but reported "35% improved" cervical pain (Tr. 323). In February, 2005, Plaintiff underwent

a cervical diskectomy and fusion at C5-6 (Tr. 307). In April, 2005, Dr. Mianecki opined that she was disabled from all work as a result of exogenous obesity, episodic hypertension, right knee pain, and difficulty walking or standing for long periods (Tr. 309, 311). He found that as of December 31, 2001, Plaintiff was unable to lift more than 20 pounds or stand or walk for more than one hour in an eight-hour work day (Tr. 314). Dr. Mianecki found the absence of pushing, pulling, or manipulative limitations (Tr. 314).

January, 2006 notes by orthopedist Daniel D. Rhoads, M.D. state that Plaintiff demonstrated an "excellent range of motion of the neck" (Tr. 360). In January, 2007, Plaintiff complained of renewed shoulder pain, reporting that a recent injection was ineffective (Tr. 357). Dr. Rhoads, noting that "there is nothing that requires surgical attention at this time," recommending physical therapy (Tr. 356). In February, 2007, Dr. Mianecki submit a sworn statement on behalf of Plaintiff's benefits claim, noting that he had treated Plaintiff since July, 1978 (Tr. 365). He testified that between 2000 and the end of 2001, Plaintiff experienced "[e]xogenous obesity, degenerative osteoarthritis of the bilateral knees, . . . gout, a fall with a severe head laceration and closed head injury[,] . . . [c]hronic cephalgia, [m]igraines, [d]iffuse degenerative osteoarthritis of the lumbar . . . and cervical spine, [p]ost-concussion syndrome, [and] sleep apnea" (Tr. 366). Dr. Mianecki noted that Plaintiff's subjective complaints of knee, hip, neck, and arm pain were supported by an MRI showing cervical and degenerative disc disease (Tr. 366). He also noted that Plaintiff's blood pressure had been "intermittently poorly controlled" and that 2002 sleep apnea testing results were consistent with Plaintiff pre-December 31, 2001 condition (Tr. 366-367, 371). Dr.

-8-

Mianecki found that Plaintiff's joint problems were exacerbated by morbid obesity (Tr. 371). He assessed Plaintiff's pre-December 31, 2001 pain symtomatology as "severe," adding that he found her allegations of pain credible (Tr. 375, 377). In March, 2007, Plaintiff underwent arthroscopy of the left shoulder with good results (Tr. 350-351).

### 2. Consultive and Non-Examining Sources

A July, 2004 Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff was capable of lifting 20 pounds occasionally and ten pounds frequently; sitting, standing, and walking for about six hours in an eight-hour workday; and an unlimited ability to push or pull in the upper and lower extremities (Tr. 159). The Assessment found that Plaintiff was limited to *occasional* ramp and stair climbing, balancing, stooping, kneeling, crouching, and crawling, but was precluded from all ladder, rope, or scaffold climbing (Tr. 160). The Assessment found the absence of manipulative, visual, or communicative limitations but determined that Plaintiff should avoid concentrated exposure to machinery and heights (Tr. 162).

### C.    May 30, 2007 Vocational Expert Testimony[3]

VE Lawrence Zatkin testified that if Dr. Minecky's April, 2005 opinion that Plaintiff could stand and walk for one hour and sit for about two hours in an eight-hour workday was credited, Plaintiff would be precluded from all full-time employment (Tr. 410).

_____

[3]*See* footnote 1.

### D.     The ALJ's July 27, 2007 Decision

Citing Plaintiff's medical records, ALJ Blum found that Plaintiff's severe impairments of morbid obesity, hypertension, degenerative arthritis and complaints of occasional neck pain did not meet or medically one listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 22- 23).  The ALJ found a Residual Functional Capacity ("RFC") for sedentary work, determining that Plaintiff was capable of performing her former work as a bookkeeper[4] (Tr. 23).  Concluding that Plaintiff's allegations of disability were "not wholly credible," the ALJ observed that as of September, 1999, Plaintiff's hypertension was "well controlled" (Tr. 20).  He also supported his credibility determination by noting that Plaintiff's regular activities included "light housekeeping, shopping for groceries, watching television, playing music, reading, [] playing card games, dining out, camping, and attending church services" (Tr. 22).

### <u>STANDARD OF REVIEW</u>

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

-11-

can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has

the burden of proof as steps one through four, but the burden shifts to the Commissioner at

step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS[5]

### A.  The Credibility Determination

Plaintiff faults the ALJ for finding that her allegations of limitations were not wholly

credible, arguing that contrary to the administrative finding, objective medical evidence

supports her claims.  *Plaintiff's Brief* at 20-23.  Citing *Rogers v. Commissioner of Social

Security*, 486 F.3d 234, 248-249 (6th Cir. 2007), she contends that the ALJ overemphasis on

her daily activities to support his credibility interpretation amounts to a distortion of the

record.   *Id.* at 21; SSR 96-7p.

The credibility determination, guided by SSR 96-7p, describes a two-step process for

evaluating symptoms.  *See Duncan v. Secretary of Health and Human Services,* 801 F.2d

847, 853 (6th Cir.  1986). "First, the adjudicator must consider whether there is an underlying

medically determinable physical or mental impairment. . .that can be shown by medically

---

[5]Plaintiff  argues (1) procedural and substantive errors in the treating physician
analysis (2) that the ALJ erroneously rejected her allegations of disability, and (3) the
ALJ's determination that she could perform her past relevant work as a bookkeeper is not
supported by substantial evidence.  Because the treating physician analysis hinges in part
on the credibility determination, the Court will discuss Plaintiff's first two arguments in
reverse order.

acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record."

C.F.R. 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in evaluating the "limiting effects of pain or other symptoms:"

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

The ALJ's credibility determination, well supported by record evidence, should remain undisturbed. The ALJ complied with the procedural requirements of SSR 96-7p by acknowledging and discussing all of the seven C.F.R. 404.1529(c)(3) factors, *supra,* including Plaintiff's prescribed medication and its possible side effects, physical therapy, and professed claims of physical limitation (Tr. 19-22). In contrast to *Rogers v. Commissioner of Social Sec.*, *supra,* 486 F.3d 234, 248-249, the present ALJ offered "specific reasons" for his credibility finding. *Id.* (*citing* SSR 96-7p)(internal citations omitted). The ALJ noted that Plaintiff continued to camp twice a month, play cards, attend church, and shop for groceries

(Tr. 22 citing 144-145, 431).   Plaintiff's counsel argues somewhat evasively that the ALJ mis-characterized his client's frequent camping trips, averring that "she is . . . *likely* to stay in an RV, with a comfortable bed, toilet, and room to move when necessary" (emphasis added). *Plaintiff's Brief* at 22.  However, at no time did Plaintiff  actually allege that she camped in an RV rather than a tent.  Even assuming that Plaintiff "camped" in an RV twice a month, the ALJ presumably inferred that she was able plan for the trip, organize her household accordingly, pack, and travel by car or R.V.

Although Plaintiff contends that the ALJ placed inordinate emphasis on her daily activities, in fact, her admitted functioning level contrasts sharply with her allegations of disability.   The transcript's numerous references to the fact that from at least 1999 forward, she and her husband traveled  from Michigan each fall to spend their winters in a warmer climate suggest an active retirement rather than disability (Tr. 242, 247, 264, 350-361, 388). Consistent with this inference, in August, 2002, a treating physician listed Plaintiff's work status as "retired" (Tr. 262). Because the credibility determination is well supported by substantial evidence it should not be overturned.

### B.  The Treating Physician Analysis

Plaintiff argues that the ALJ improperly discounted Dr. Mianecki's opinion that she was disabled from all work prior to the expiration of benefits on December 31, 2001. *Plaintiff's Brief* at 14-20. Citing 20 C.F.R. § 404.1527(d)(2), she contends that the long-term treating physician's findings were entitled to controlling weight, submitting  further that the

-14-

ALJ failed to give "good reasons" for discounting the opinion. *Plaintiff's Brief* at 17.

The uncontradicted opinions of treating physicians are entitled to complete deference. *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th Cir. 1991). In the presence of contradictory evidence that would allow the ALJ to accord less than controlling weight, the she must nonetheless consider the following factors: "the length of the . . . relationship and the frequency of examination, the nature and extent of the treatment, . . . [the] supportability of the opinion, consistency . . . with the record as a whole, and the specialization of the treating source." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004)(*citing* 20 C.F.R. § 404.1527(d)(2)). An ALJ's failure to explain his reasons for rejecting a treating physician's opinion constitutes reversible error. *Id.* at 546.

Contrary to Plaintiff's argument, the ALJ discussed all of the factors set forth in 20 C.F.R. § 404.1527(d)(2):

> "Dr. Mianecki has opined that the claimant has not been able to engage in even sedentary work in the last 20 years[,] making the claimant disabled since 1985. Dr. Mianecki has reportedly treated the claimant since 1978 but seems unaware that the claimant worked as a bookkeeper until 1996 and continued to make and sell arts and crafts including rugs out of her home until December 2001"

(Tr. 21). Although Plaintiff's now attempts to resuscitate Dr. Mianecki's overstatement by arguing that her sparse work activity between 1985 and 2001 confirms the treating physician's assessment, none of her previous submissions alleged disability anywhere nearly as early as 1985. Moreover, Dr. Mianecki's February, 2007 statement contains additional

-15-

inconsistencies with the rest of the record, erroneously indicating that as of December, 2001, Plaintiff had experienced "a fall with a severe head laceration and closed head injury" (Tr. 366). In fact, Plaintiff's treating records and testimony indicate that she did not experience the head injuries until April, 2002 - over four months after the expiration of disability benefits (Tr. 190). More generally, the ALJ's finding that Dr. Mianecki's pre-2002 treating records, summarized *supra,* were inconsistent with his later finding that Plaintiff was disabled from all work provides ample grounds for the rejection of the treating physician's opinion (Tr. 20-21).

### C.  Past Relevant Work

Finally, Plaintiff argues that the ALJ's Step Four finding that she could perform her former work as a bookkeeper is not supported by substantial evidence. *Plaintiff's Brief* at 23-25.  On a related note, she contends that the ALJ skirted his "affirmative duty" to ask the VE if his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT"). *Id.* at 25 (*citing* SSR 00-4p).

At Step Four, the Commissioner considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant. SSR 82-61. If so, the claimant is not disabled. If not, the Commission considers whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Id.* Thus, if a claimant has the RFC to work at his or her past job as actually performed, even if that particular job

is less demanding than the work as generally performed, or even if it involves fewer hours or greater opportunity for rest, he or she will be found not disabled at step four. *Stephens v. Shalala,* 50 F.3d 538, 542 (8th Cir. 1995).[6]    Under SSR 82-62, a three-prong test must be met in order to find that a claimant can return to his past relevant work "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job." *Id.*

Contrary to Plaintiff's argument, substantial evidence supports the ALJ's finding that Plaintiff could return to  sedentary  bookkeeper position as performed.  *See* SSR 82-61, *supra*.   Further, findings 5 through 7, summarizing the body of the opinion, satisfy the requirements of SSR 82-62 (Tr. 23).  The ALJ also noted that he had considered Plaintiff's testimony, presumably including her statement that her former work did not require her to lift more than two to three pounds (Tr. 22, 416-417). Further, he observed that Plaintiff's allegations of functional limitation were undermined by Dr. Mianecki's September, 1999

---

[6]SSR 82-61 cites another possible test, "[w]hether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job" *Brooks v. Sullivan,* 766 F.Supp. 584, 591 (N.D.Ill.,1991); SSR 82-61.  However, SSR 82-61 goes on to caution against the dangers of using such a generalized test. "Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable." *Pinto v. Massanari,* 249 F.3d 840, 846 (9th Cir. 2001).  The court in *Steward v. Bowen,* 858 F.2d 1295, 1300 (7th Cir.1988) also rejected the application of a "broad generic, occupational classification" in making a Step four determination: "SSR 82-61 clearly refers to *particular* past occupations, not general classifications."

-17-

notes stating that x-rays had showed only "minimal arthritic changes" (Tr.20, 244).

Likewise, although Plaintiff currently alleges that she experienced stress and other emotional

issues as a result of her conditions, August, 2001 treating notes indicate that Plaintiff felt

"relatively well" despite weight problems (Tr. 237). A July, 2004 Residual Functional

Capacity Assessment based on Plaintiff's condition for the pertinent period supports the

ALJ's conclusion that she could perform sedentary work, actually finding that she capable

of exertionally *light* work (Tr. 159-162). Consistent with this finding, September, 2004

treating notes state that Plaintiff demonstrated a "full active range of motion of the bilateral

upper extremities" with 5/5 strength[7] (Tr. 322).

        In addition, Plaintiff's SSR 00-4p argument that the ALJ failed in his affirmative duty

to enquire as to conflicts between the DOT and the VE's testimony is inapplicable here. The

Step Four determination of non-disability moots the Step Five question of whether "other

work" exists. As such, "expert vocational testimony is not required when a finding of non-

disability is based on the claimant's ability to perform his past work." *Parker v. Secretary of

Health and Human Services,* 1991 WL 100547, 3 (6th Cir. 1991)(*citing Smith v. Secretary

of Health and Human Services,* 893 F.2d 106, 110 (6th Cir.1989)). In the absence of Step

Five "job findings," the ALJ need not inquire about conflicts between the VE's testimony

and the DOT. In addition, the ALJ's use of the VE in making his Step Four determination

_____

        [7]Although the September, 2004 notes refer to Plaintiff's condition after the
expiration of benefits, they contradict her claim that her alleged disability is ongoing (Tr.
404).

-18-

does not constitute error.  "At [S]tep [F]our of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ."  *Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir.1987).

In closing I note that while Plaintiff's claims of limitation are partially supported by record evidence, substantial evidence and a well-articulated rejection of her treating physician's opinion support the non-disability finding.  Plaintiff's regular activities have not been cited to trivialize her legitimate discomfort, but to demonstrate that the ALJ's decision is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level and as such, should not be disturbed by this Court.  *Mullen v. Bowen*, *supra.*

## **CONCLUSION**

For these reasons, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

Any objections to this Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with

-19-

specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained

within the objections.

S/R. Steven Whalen

R. STEVEN WHALEN

UNITED STATES MAGISTRATE JUDGE

Dated:  July 9, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 9, 2009.

S/Andrea Teets

Deputy Clerk